Maurice Wahl, J.
The defendant is a broker-dealer in the securities field. On or about December 17, 1958, plaintiff, a customer of the defendant, purchased through the defendant a $500 6% convertible bond maturing in 1974, of the corporation then known as “ Two Gfuys From Harrison”, which corporation’s name was later changed to Vornado, Inc.
This was a cash transaction and the bond in bearer form remained in the possession of the defendant broker, who from time to time clipped the interest-bearing coupons from the bond *649 and forwarded them to the company. The bond by its terms was convertible at the conversion price of $11.50, and as the bond was for the face amount of $500, it could therefore be convertible into 43.48 shares of the common stock of the corporation.
Some time prior to April 3, 1961, and before the due date of the bond, the corporation, Vornado, Inc., pursuant to the terms of the bond, called the bond in for redemption, the last date of redemption being April 3,1961. The bond, after this date, ceased to bear interest, and could not be converted into the common stock of the corporation.
It is the plaintiff’s contention that the defendant broker did fail and neglect to notify him that the bond had been called for redemption by the corporation, and that the plaintiff had no knowledge of such a call until after the last date for redemption.
The plaintiff therefore contends he was thus unable to convert this $500 bond into 43.48 shares of Vornado, Inc., on the basis of $11.50 per share conversion price. The closing price of the common stock of Vornado, Inc., as of April 3, 1961, the last date of conversion, was $28.25. On the basis of 43.48 shares, representing the number of shares plaintiff would have been entitled to by the terms of the bond, the total value of such shares was the sum of $1,228.28. The plaintiff alleges he first learned of the call for redemption after the last date and sold the bond on October 20, 1961, for $533.75, representing the face value of the bond, together with accrued interest, and that if he had been apprised of the situation, he could have converted the bond into shares and would have received the sum of $694.53 additional on the transaction.
The plaintiff in his cause of action seeks to recover the sum of $728 for the loss alleged to have been sustained by him due to the breach of contract, and breach of bailment as bailee, and also because of the defendant’s negligence in failing to notify the plaintiff of the convertibility of the bond into common stock.
However, it seems to this court that the amount involved herein is not the difference between the face value of the bond, namely, $500, and the value of the shares, $1,228.28, but rather the difference between the amount realized by the plaintiff on the sale of the bond, $533.75, and the value of the shares. This sum would be $694.53. However, this is of little matter in view of the court’s decision.
From the evidence adduced at the trial it appears that the plaintiff was aware that the bond was convertible at a certain ratio into shares of the common stock of the company issuing the bond. There was no proof of an agreement that the bond was to be kept otherwise than for safekeeping.
*650 The plaintiff makes no claim that he and the defendant entered into any agreement under which the defendant undertook to care for the security, service the account and otherwise carry on with a custody account coupled with managerial or custodial services. Such agreements are not uncommon. Here the relationship of principal and broker terminated upon the purchase and sale of the bond. There is proof that prior to the purchase of the bond the plaintiff had read the prospectus which clearly indicated the conversion and call aspects of the bond. Here there was an obligation on the part of the plaintiff to follow the status of the bond. This he failed to do. The mere fact that the plaintiff chose to leave the bond with the defendant for safekeeping imposed no obligation other than that. It was at best a gratuitous use of the defendant’s safe or vault and he was nothing more than a naked custodian. Such a person would be liable for wanton or gross negligence. The numerous cases cited by the plaintiff are not apposite to the issues. Since the defendant owed no duty except to abstain from gross or wanton negligence, not proven in this case, the complaint must be dismissed and judgment rendered for the defendant.